IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 30, 2002

# PENNY LOFTIS TAYLOR, ET AL. v. CHRISTY SOWELL, ET AL.

**Appeal from the Juvenile Court for Davidson County**
**No. 9719-35306     Betty K. Adams, Judge**

---

**No. M2002-00535-COA-R3-JV - Filed February 18, 2003**

---

Christy Sowell appeals an Order terminating her parental rights as to her child, S.P.S.  The trial court, finding abandonment by willful failure to support and willful failure to visit the minor child, entered an Order terminating her parental rights.  We affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

John C. Ford, Nashville, Tennessee, for the appellant, Christy Sowell.

J. Stephen Mills, Nashville, Tennessee, for the appellees, Penny and Charles Taylor.

Merrilyn Feirman, Nashville, Tennessee, for the Guardian ad Litem for the minor child, S.P.S.

## OPINION

S.P.S. was born to William Shane Sowell and Christy Sowell on May 5, 1997.  On March 26, 1999, Penny L. Taylor filed a Petition for Temporary Custody of S.P.S. asserting that he was dependent and neglected.  On April 12, 1999, a hearing was held before Honorable J. Michael O'Neil, referee in the Juvenile Court of Davidson County, Tennessee.  Present for the hearing was Petitioner Penny Taylor and the mother of the child, Christy Sowell.  As a result of that hearing on June 1, 1999, the referee entered an Order changing custody from Christy Sowell to Penny Taylor, finding that such change of custody was in the best interest of S.P.S.  On August 8, 2001, Penny L. Taylor and her husband, Charles K. Taylor, filed a Petition seeking to terminate the parental rights of William Shane Sowell and Christy Sowell on grounds of abandonment and seeking complete custody, control and guardianship of S.P.S.  On September 17, 2001, Honorable John Ford, attorney at law, was appointed counsel to represent Christy Ann Sowell.  On that same date, Honorable Merrilyn Feirman was appointed guardian ad litem for S.B.S.

An Order terminating parental rights of Christy Sowell was entered on January 17, 2002. [1] The Order of Termination provided:

1.        Christy Sowell, mother of [S.P.S.], has abandoned [S.P.S.] pursuant to T.C.A. 36-1-102 (1)(A)(i) in that she willfully failed to visit said child in the four months immediately preceding the filing of this petition.  The Court finds that Ms. Sowell's testimony lacks credibility when she testified that her failure to visit was not willful.  Specifically, Ms. Sowell testified that Charles and Penny Taylor kept her son's location secret from her and she did not know where her son was during the four months preceding the filing of this petition.  However, Ms. Sowell failed to utilize a number of means available to her to locate her son.  Ms. Sowell's other child, Ms. Sowell's father, Ms. Sowell's mother-in-law and Ms. Sowell's husband all knew how to locate Mr. and Mrs. Taylor and Ms. Sowell did not contact any of them for [S.P.S.]'s address.  Ms. Sowell admitted in her testimony that she exerted little effort to locate her child.

Additionally, Ms. Sowell never sought the assistance of the judicial system to help her establish visitation with her son.

2.        Christy Sowell has willfully abandoned the above referenced child pursuant to T.C.A. 36-1-102(1)(A)(iv), in that she willfully failed to support [S.P.S.] in the four months immediately preceding the filing of this petition.  Ms. Sowell admitted that she had not paid any support for her child since her child was placed in the custody of the Taylors on April 12, 1999 and had only provided gifts for the child on one occasion.  Ms. Sowell admitted that she worked for at least two months of the four months preceding the filing of this petition and paid no support.  Ms. Sowell presented no evidence that she was unable to work during that time and even testified that her unemployment during this time was voluntary.  Furthermore, the Court finds that Ms. Sowell willfully failed to provide support for her son even though she had the capacity to work and pay the support.

3.        The Court finds that William Shane Sowell, the father of [S.P.S.] has stated that he will join with the Taylors in allowing the child to be adopted by the Taylors.

4.        The Court finds that the termination of Christy Sowell's parental rights is in the best interest of [S.P.S.] upon the following reasons:

a.        Charles and Penny Taylor have been the legal custodians of [S.P.S.] since April 12, 1999 when the child was only 2 years old.

b.        [S.P.S.] recognizes Charles and Penny Taylor as his parents and knows Christy Sowell only as "Christy" but does not know that she is his biological mother.

c.        Charles and Penny Taylor have been the primary caretakers of the child for over two years.

---

[1]  The Order of Termination recites that the termination hearing was held January 3, 2002; however, the transcript of the hearing indicates that it occurred on January 17, 2002.  This discrepancy is not deemed material.

d. Christy Sowell has seen [S.P.S.] on only one occasion in the past two years and that contact was only an accidental contact at a public place.

e. Christy Sowell has not paid any support for [S.P.S.] in over two years.

f. Charles and Penny Taylor have expressed the desire to adopt [S.P.S.] immediately following the outcome of this proceeding providing the child with a permanent stable home.

g. William Shane Sowell has indicated that he is [in] agreement that Charles and Penny Taylor adopt the child and will join with the Taylors in an adoption proceeding.

h. Although Christy Sowell testified that she had a long-term goal to regain custody of [S.P.S.], she was unable to offer any definite plan that would allow her to regain custody of said child in the near future.

5. It is in the best interest of [S.P.S.] that legal and physical custody of [S.P.S.] remain in Charles and Penny Taylor and that they be available to beg[i]n adoption proceedings.

Therefore, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that all of Christy Sowell's parental rights to the child, [S.P.S.], be and the same are hereby terminated forever, and the complete custody, control and guardianship of said child is hereby awarded to Penny Loftis Taylor and [] her husband, Charles Kenneth Taylor.

On February 15, 2002, Christy Sowell filed timely appeal.

Before addressing the merits of this appeal, we must express concern about the testimonial record in this case. This transcript of the testimonial record is 86 pages in length. The word "inaudible" appears 261 times in this transcript. These "inaudibles" appear in the examination of witnesses as follows: Mrs. Penny Taylor - direct examination-16 times, cross-examination-29 times; Mr. Charles Taylor - direct examination-16 times, cross-examination-24 times; Christy Sowell - direct examination-88 times, cross-examination-27 times, re-direct examination-30, re-cross examination-8 times; and William Shane Sowell - direct examination-20 times, cross-examination-3 times.

This Court has been compelled to spend an inordinate amount of time reading and re-reading this transcript in order to determine whether or not the testimony is sufficient to establish, by clear and convincing evidence, a basis for terminating the parental rights of Christy Sowell. Appellant is entitled to an adequate record on appeal, and, when the court reporter cannot decipher the tape recording of the hearing, something is amiss. The Certificate of the court reporter states, "I, . . . hereby certify that I reported the foregoing audio taped hearing was transcribed by machine shorthand to the best of my skills and abilities, and thereafter the same was reduced to typewritten form by me." The Certificate of the trial judge approving the transcript stated: "On the trial of this case, the foregoing was all the evidence submitted to the Court; and no written objections as to the accuracy or authenticity of the Transcript of the Proceedings having been filed within fifteen days of lodging of the said Transcript of Proceedings with the clerk of the trial court, I hereby certify

approval of said Transcript of the Proceedings and authentication of the attached exhibits pursuant to Tennessee Code Annotated." Serious consideration has been giving to reversing and remanding this cause due to the inadequacy of the testimonial transcript. After careful review and re-review of this transcript, we conclude that it is sufficient to allow appellate review.

The transcript of evidence at the termination hearing reveals the testimony of four witnesses, Penny Loftis Taylor, Charles Kenneth Taylor, Christy Sowell and William Shane Sowell. The facts of the case are essentially undisputed. Penny Loftis Taylor and her husband, Charles Kenneth Taylor, were first awarded custody of the child by order of the juvenile court in April of 1999. S.P.S. was, at that time, one month short of his second birthday. He has remained in custody of the Taylors continuously since that time.

Christy Sowell has not visited with S.P.S. since a visit on his second birthday in May of 1999. This visit took place at the home of the Taylors and lasted about fifteen to twenty minutes. The only other time that Christy Sowell has seen S.P.S. was about a year prior to the January 7, 2002 hearing when she, without any prior arrangement, came upon Mrs. Taylor and S.P.S. at a check cashing establishment. Christy Sowell has never paid any child support for S.P.S. nor purchased any clothing or food for him.

S.P.S. has remained constantly in the custody of Mr. and Mrs. Taylor, and they have provided for his upkeep, preschool, and all of the necessities of life. S.P.S. does not know Christy Sowell and believes Mr. and Mrs. Taylor to be his father and mother. S.P.S. lives in the home of Mr. and Mrs. Taylor where the eldest son of Mrs. Taylor, 18 years of age at the time of the hearing, also resides. The relationship between the older son and S.P.S. is a good one, and the Taylor home is free of alcohol, drugs and criminal activity. Mrs. Taylor, at the time of the hearing, was 57 years of age, and her husband, 67 years of age.

The Petition for Termination also sought the termination of parental rights of William Shane Sowell. This Defendant Father appeared at the hearing without counsel and announced his intention to join in the Petition of the Taylors to adopt S.P.S. Upon such announcement, the trial court continued the hearing as to the parental rights of William Shane Sowell.

Evidence on behalf of Christy Sowell consisted alone of her own testimony, which the trial court specifically found lacking in credibility. She admitted that she did not support the child with even token child support in spite of the fact that she worked at gainful employment for a substantial part of the time prior to the filing of the Petition to Terminate. Her testimony that the Taylors "did not want" support from her begs the question. Of more significance than support is the undisputed fact that she did not visit with the child at all after the second birthday of S.P.S. in May of 1999. She acknowledged that both her daughter and her mother-in-law knew where S.P.S. lived and that she made little effort to locate her son. Likewise, at no time did she seek assistance of the court to establish visitation with her son. She asserts, unconvincingly, that she was afraid of the Taylor family.

This Court has held:

Six 'nonexclusive' factors were suggested for determining whether a parent has abandoned their child in *Koivu v. Irwin*, 721 S.W.2d 803 (Tenn. Ct. App. 1986). They are: (1) the amount of support given to the child; (2) the degree of contacts and visits with the child; (3) the frequency of gifts on special days; (4) whether custody of the child was voluntarily given over to another; (5) the length of time the child has been away from his natural parents; and (6) the home environment and conduct of the natural parents prior to the removal of the child from their custody. The Court stated [that] [t]o determine an abandonment, the Court is not to look at the protestations of affections and intentions expressed by the natural parent, but look at the past course of conduct. This is a judicial question to be determined consistent with the welfare of the child. [] The ultimate question in an abandonment situation is whether there is clear and convincing evidence of an overall lack of any parental responsibility. *Id.* at 807. Moreover, even where a parent has reestablished contact with a previously abandoned child, the Court may decline to find the abandonment has been terminated. *Id.* at 808. The Court has also noted the abandonment inquiry is heavily fact oriented and the outcome depends upon the facts of each case. *Rigsby v. Rigsby*, 1994 Tenn. app. LEXIS 46. The Court acknowledged the above factors and remarked no single factor is controlling since their purpose is simply to guide the Court's consideration of the evidence. *Id.*

*Baral v. Bombard*, No. M-COA-2002-00378, 2002 WL 1256246, at *4 (Tenn. Ct. App. June 5, 2002). Clear and convincing evidence established abandonment by Christy Sowell of S.P.S. both by willful failure to support during the four month period immediately preceding the filing of the Petition to Terminate and by wilful failure to visit during the same time.

Tennessee Code Annotated section 36-1-113(i) delineates the factors that a trial court must consider when determining the best interest of a child. These factors are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and mental condition;

(6)   Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)   Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)   Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)   Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (1-9) (2001).  The evidence in this case clearly establishes that the best interest of S.P.S. lies in the vesting of custody in Penny and Kenneth Taylor.

The judgment of the trial court is in all respects affirmed, and the case is remanded for such further proceedings as may be necessary.  Costs of the cause are taxed against Appellant.

_____
WILLIAM B. CAIN, JUDGE